In the Matter of MICHEL LaCHANCE, Petitioner, v NEW YORK STATE RACING AND WAGERING BOARD et al., Respondents.

First Department, July 10, 1986

## APPEARANCES OF COUNSEL

*Richard L. Rubin (Esther Chyzyk Bernheim* with him on the brief), for petitioner.

*Douglas D. Aronin* of counsel *(Robert Abrams, Attorney-General,* attorney), for respondents.

## OPINION OF THE COURT

MILONAS, J.

Petitioner herein is licensed by respondent New York State Racing and Wagering Board as an owner-trainer-driver of harness racing horses. On September 9, 1985, while waiting to board a flight to Montreal, he was detained at La Guardia Airport by agents of the United States Drug Enforcement Administration. Despite his failure to file the required customs declaration, petitioner admitted to being in possession of $30,000 in United States currency. He initially claimed that he had obtained the money from the sale of a horse but then stated that it was the proceeds from gambling on horse races. Petitioner subsequently informed the agents that he had locked the money in his car and apparently also provided inconsistent estimates of the amount involved.

Agent Robert O'Leary, who was engaged in an ongoing investigation of the sale of non-FDA approved substances, accompanied petitioner and Agent Mark Thornton to the

automobile in which the money had been placed. There was some question concerning the registration of the vehicle to a certain George Kleiman, whom petitioner denied knowing. After the agents retrieved the money, they counted it, discovering that there was actually $49,000 in cash. They then confiscated the money and gave petitioner a receipt for it. The currency was put into a paper bag which the agents had found in the trunk of the car and presented to a customs official at Kennedy Airport. A specially trained detector dog thereupon emitted a positive alert for the presence of a controlled substance. According to the agents, the dog's reaction could have been to the bag rather than the money.

As a consequence of the airport incident, petitioner was summoned pursuant to 9 NYCRR 4119.7 to an investigation of the matter conducted by respondent Board. An interview was held on September 23, 1985, at which time petitioner appeared with his counsel. Although he responded to inquiries concerning his license as an owner-trainer-driver of harness horses in New York State, his attorney directed him not to respond to any questions about what had transpired at La Guardia Airport. In that connection, petitioner's lawyer asserted that he was instructing his client not to answer based on the latter's constitutional rights. Thus, throughout the course of the hearing, petitioner repeatedly stated that he would follow his attorney's advice in refusing to answer questions. Counsel's directions not to reply included such inquiries as whether petitioner was leaving the country on September 9, 1985, whether or not he sold horses in New Jersey and Canada and whether he customarily carried more than $5,000 in cash on his person. When petitioner was asked if he was pleading the 5th Amendment, his lawyer denied that he was doing so, instead invoking petitioner's general constitutional rights.

On September 30, 1985, respondent issued a notice of suspension summarily suspending petitioner's license pending a hearing scheduled for October 4, 1985 on the issue of whether his license should be suspended indefinitely for failure to cooperate with the Board's investigation. However, the suspension was stayed by order to show cause, entered on October 1, 1985, in the Supreme Court, Queens County, pending the return date of a CPLR article 78 proceeding. The stay was continued by consent of the parties during subsequent adjournments of the proceeding but was eventually rendered

moot by virtue of the Board's final determination, which followed the October 4th hearing.

At the hearing, Agents Mark Thornton and Robert O'Leary both testified regarding their encounter with petitioner at La Guardia Airport. It was revealed that while no criminal charges were then pending against petitioner, he was considered a subject in a continuing investigation which could eventually result in a criminal prosecution. After the Board had rested its case, petitioner attempted to call his attorney to the stand so that he could describe his recollection of what had occurred at the investigative interview. The hearing officer, in ruling that counsel's testimony could not be received, declared that the transcript of that proceeding spoke for itself. Petitioner then stated that he had refrained from answering questions because he had been advised by his lawyer that to do so would violate his constitutional rights.

The hearing officer, in a report issued on November 7, 1985, determined that the questions to which petitioner had refused to reply "were relevant to activities for a license as a harness racing participant" and recommended suspension of his license. The hearing officer did not reach the issue of whether petitioner had properly invoked his constitutional rights. In an order dated November 12, 1985, the Board upheld the recommendation and suspended petitioner's license "until such time as complete and proper responses are given by the licensee". Petitioner thereupon commenced the instant article 78 proceeding which was subsequently transferred to this court by order of the Supreme Court, New York County (Harold Tompkins, J.), entered on December 13, 1985. By stipulation of the parties, dated December 2, 1985, it was agreed that suspension of petitioner's license be stayed pending determination of this proceeding by the Appellate Division.

It is petitioner's contention that the Board was not authorized to suspend his license based upon his assertion of his 5th Amendment privilege. In essence, he argues that the Board's action was a coercive measure calculated to compel him to incriminate himself in connection with a matter which could lead to a criminal prosecution. According to respondent, the Board suspended petitioner's license for failure to cooperate with its investigation as required by its regulations, and this is a valid ground for such suspension. Moreover, the Board disputes petitioner's claim that he pleaded the 5th Amendment, urging that the record clearly demonstrates that his

attorney expressly denied that petitioner was invoking the 5th Amendment. In that regard, respondent cites the Racing, Pari-Mutuel Wagering and Breeding Law, as well as certain regulations promulgated thereunder, for the proposition that the Board has broad statutory powers to suspend a license.

Section 309 of the statute provides that:

"2. If the state racing and wagering board shall find that the experience, character and general fitness of the applicant are such that the participation of such person in harness horse race meets will be consistent with the public interest, convenience and necessity and with the best interests of racing generally in conformity with the purposes of sections two hundred twenty-two through seven hundred five of this chapter, it may thereupon grant a license.

"Without limiting the generality of the foregoing, the board may refuse to issue a license, pursuant to this section, if it shall find that the applicant:

"a. Has been convicted of a crime involving moral turpitude;

"b. Has engaged in bookmaking or other form of illegal gambling;

"c. Has been found guilty of any fraud or misrepresentation in connection with racing or breeding;

"d. Has been found guilty of any violation or attempt to violate any law, rule or regulation of racing in any jurisdiction for which suspension from racing might be imposed in such jurisdiction; or

"e. Who has violated any rule, regulation or order of the board. The board may suspend or revoke a license issued pursuant to this section if it shall determine that (i) the applicant or licensee (1) has been convicted of a crime involving moral turpitude; (2) has engaged in bookmaking or other form of illegal gambling; (3) has been found guilty of any fraud in connection with racing or breeding; (4) has been guilty of any violation or attempt to violate any law, rule or regulation of any racing jurisdiction for which suspension from racing might be imposed in such jurisdiction; or (5) who has violated any rule, regulation or order of the board, or (ii) that the experience, character or general fitness of any applicant or licensee is such that the participation of such person in harness racing or related activities would be inconsistent with the public interest, convenience or necessity or with the best interests of racing generally."

Further, the Board's regulations mandate that a licensee

testify under oath concerning any facts within his knowledge when requested to do so by the Board (9 NYCRR 4119.7), and the failure to do so constitutes an undesirable act warranting punitive action (9 NYCRR 4119.8). It is, therefore, evident that petitioner, as a licensee, has a duty to testify before the Board with respect to matters properly within its purview and that the failure to comply with a Board direction to so testify may result in the suspension or revocation of his license. Racing, Pari-Mutuel Wagering and Breeding Law § 301 sets forth the general powers of the Board. In *Matter of Sullivan County Harness Racing Assn. v Glasser* (30 NY2d 269) a case concerning the precursor provisions to section 301 as contained in the old Pari-Mutuel Revenue Law, the Court of Appeals construed the authority of the then State Harness Racing Commission as being very broad. Since the subject of the inquiry about which petitioner was called before the Board was certainly related to harness racing, he was obligated to testify.

However, an individual's 5th Amendment right may be asserted in any proceeding, whether criminal or civil, administrative or judicial, investigatory or adjudicatory. *Kastigar v United States,* 406 US 441). The fact that a licensee may have a duty to testify before the Board does not mean that his constitutional rights are thereby abridged. *(Matter of Tufariello v Barry,* 60 AD2d 813.) Consequently, petitioner was entitled to invoke his 5th Amendment privilege as to any question whose answer he reasonably believed could incriminate him. *(Matter of Tufariello v Barry, supra.)*

■ Although it is true that petitioner did not specifically claim that, in declining to respond to respondent's questions, he was relying upon his 5th Amendment right, an examination of the transcript herein clearly indicates that his counsel was instructing him not to answer because of possible self-incrimination. Moreover, petitioner did not, as respondent argues, waive his 5th Amendment privilege by making certain voluntary admissions to law enforcement agents at La Guardia Airport. While a witness may be deemed to have waived the right when, for instance, he provides testimony to his advantage and, in the same proceeding, refuses to answer other questions which are to his disadvantage or that of friends and associates *(People v Bagby,* 65 NY2d 410), that person may, the Court of Appeals has held, "assert the privilege anew in a separate proceeding, where circumstances and surroundings can often differ dramatically". *(People v Bagby,*

*supra,* at p 414.) According to the court therein (at pp 414-415):

"A further distinction has been drawn between defendants in criminal cases and 'ordinary witnesses'—nonparties in criminal cases and witnesses in civil cases * * * Because the criminal defendant can never be compelled to take the stand, when he does so voluntarily he waives his 5th Amendment privilege and cannot refuse to answer questions regarding any matters relevant to the case * * * A nonparty witness in a criminal case, however, can be compelled to testify against his will and thus does not waive his 5th Amendment privilege merely by acceding to the command of a subpoena. Thus, ' "where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him" ' * * *

"A waiver should be found only when a witness' statements are ' "incriminating", meaning that they did not merely deal with matters "collateral" to the events surrounding commission of the crime * * * but directly inculpated the witness on the charges at issue * * * and * * * [thus] contain[ed] information that the witness was privileged not to reveal' ".

■ Certainly, unsworn statements given to government agents at the airport, even where they are related to a legitimate area of the Board's responsibility—that is, the regulation of horse racing in the State of New York—can hardly be considered to have been made at the same proceeding as that of the investigative interview and ensuing hearing. Since no waiver occurred herein, petitioner could not be punished for invoking his constitutional right not to give answers which could incriminate him notwithstanding that he was legally required to participate in the Board's inquiry. Yet, despite the fact that respondent improperly suspended petitioner's license as a means to compel him to testify on matters which he reasonably believed to be incriminatory, there is nothing to preclude the Board from hearing all the available evidence and then, if in its judgment the circumstances so warrant, making an appropriate finding of misconduct against petitioner such as would support suspension of his license. In view of the failure of the Board to make a factual determination with respect to petitioner's actions themselves, this matter should be remanded for further proceedings.

Therefore, the petition should be granted, the determination

of respondent New York State Racing and Wagering Board, dated November 12, 1985, which suspended petitioner's license as an owner-trainer-driver until such time as he responds to questions put to him by the New York State Racing and Wagering Board, annulled, on the law, and the matter remanded for further proceedings in accordance with the opinion herein.

SANDLER, J. P., CARRO, FEIN and WALLACH, JJ., concur.

Determination of respondents dated November 12, 1985, unanimously annulled, on the law, without costs and without disbursements, and the matter remanded for further proceedings in accordance with the opinion of this court filed herein.