(November 16, 1989)

■ In the Matter of ROBERT DeBONIS, Petitioner, v RICHARD CORBISIERO, as Chairman of the New York State Racing and Wagering Board, et al., Respondents.—In this proceeding,

pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (David Edwards, Jr., J.), entered on June 28, 1988, to review a determination of respondents dated May 18, 1988, which revoked petitioner's licenses as an owner and trainer of thoroughbred racing horses, the determination is unanimously confirmed and the petition dismissed, without costs.

Respondents found that in 1987 petitioner attempted to commit a fraud in connection with racing and breeding by falsely attempting to qualify four foals as "New York bred" and by causing false information to be filed with the New York State Thoroughbred Breeding and Development Fund (Fund), in violation of New York State Racing, Pari-Mutuel Wagering and Breeding Law § 213 (2) and Board rules (9 NYCRR) 4002.9 (a) and 4081.5.

The principal question raised by petitioner on appeal is whether under the facts herein, it was proper for respondents to draw a negative inference from the exercise of his right under the Fifth Amendment of the US Constitution not to testify against himself at the administrative hearing.

It is axiomatic that the Fifth Amendment privilege against self-incrimination applies to civil and criminal proceedings alike. (*McCarthy v Arndstein,* 262 US 355 [1923], *decision adhered to* 266 US 34 [1924].) This court noted in *Matter of LaChance v New York State Racing & Wagering Bd.* (118 AD2d 262, 267 [1st Dept 1986]) that "an individual's 5th Amendment right may be asserted in any proceeding, whether criminal or civil, administrative or judicial, investigatory or adjudicatory. * * * The fact that a licensee may have a duty to testify before the Board does not mean that his constitutional rights are thereby abridged." However, unlike criminal proceedings, a party's invocation of the Fifth Amendment in a civil or administrative proceeding may form the basis of an adverse factual inference. (*Baxter v Palmigiano,* 425 US 308, 316-317 [1976].)

In *Baxter v Palmigiano (supra),* a prison inmate challenged a prison disciplinary procedure which provided him with the right to remain silent but which also provided that his silence would create an inference of guilt. The court stated: "the Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future

criminal proceedings' " *(supra,* at 316, quoting *Lefkowitz v Turley,* 414 US 70, 77 [1973]); "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by *a party to a civil cause'* " *(supra,* at 318 [emphasis in original]).

Imposition of a civil sanction may not be based solely upon petitioner's assertion of the Fifth Amendment. *(Lefkowitz v Cunningham,* 431 US 801, 805 [1977].) Silence may only be one of a number of factors which the finder of fact considers in making its determination. *(See, Lefkowitz v Cunningham, supra,* at 808, n 5; *see also, Matter of LaChance v New York State Racing & Wagering Bd.,* 118 AD2d 262, 268, *supra.)* Here, petitioner's refusal to testify did not lead automatically to an adverse determination. Rather, it was one of several factors considered by the Board which determined by substantial evidence that petitioner had attempted to commit a fraud in connection with breeding and racing.

As petitioner invoked his Fifth Amendment right and was therefore unavailable as a witness, his former testimony, an interview given under oath to the counsel to the respondent Board, was admissible. (CPLR 4517; *Fleury v Edwards,* 14 NY2d 334, 338-339 [1964].) Similarly the prior sworn testimony of the witness Edward Stevens, although hearsay, was relevant and probative and therefore properly considered. *(People ex rel. Vega v Smith,* 66 NY2d 130, 139 [1985].)

The evidence adduced at the hearing established that DeBonis, who managed racing and breeding affairs for the owners of the four relevant horses, caused all four mares to be brought to the Big E Farm in New York in order to deliver their 1985 foals and then had the mares "bred back" (reimpregnated) by a registered New York stallion in an effort to qualify the four 1985 foals as "New York bred". The hearing evidence further establishes that petitioner failed the final requisite for qualifying the foals—that the dams then be permanently quartered in New York from August 16, 1985 until they delivered again the following year and if not pregnant until December 31, 1985. DeBonis nevertheless represented that he had met this requirement by causing false statements to the Fund to be issued by a veterinarian, Dr. Hempfill, and by his brood mare manager, Edward Stevens.

Petitioner has failed to adduce any specific facts indicating

bias or prejudice by the Hearing Officer. *(Matter of Warder v Board of Regents,* 53 NY2d 186 [1981], *cert denied* 454 US 1125 [1981].)

It cannot be said that the penalty of revocation is " 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233 [1974].)* Concur—Murphy, P. J., Kupferman, Kassal, Wallach and Smith, JJ.