■ In the Matter of ROBERT ANDERSON, Petitioner, v MARY JO BANE, as Commissioner of the State Department of Social Services, et al., Respondents. [— NYS2d —] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this

Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Department of Social Services which denied petitioner's application for renewal of his certificate to operate a residence for mentally disabled adults.

Petitioner is the owner-operator of the Woodcrest Manor Home for Adults (hereinafter Woodcrest), a residence for mentally disabled adults in the Town of Rhinebeck, Dutchess County. When inspectors for respondent State Department of Social Services (hereinafter DSS) arrived at Woodcrest in February 1992, they were approached by several residents who spontaneously recounted incidents of maltreatment. An investigation was conducted, during the course of which petitioner refused on several occasions to permit DSS inspectors access to the premises or to Woodcrest's records. On the basis of evidence gathered through interviews with residents and former residents of Woodcrest, eight specifications of charges were filed against petitioner,* and Woodcrest's operating certificate was temporarily suspended pending an administrative hearing. After the hearing, at which several DSS employees and psychologists testified, and tapes of interviews which had been conducted with Woodcrest residents were also placed into evidence, the Administrative Law Judge (hereinafter ALJ) issued a decision sustaining all of the charges. On the basis of these findings, suspension of petitioner's operating certificate was made permanent through the end of the licensing year and his application for renewal of the certificate was denied.

In this proceeding, brought pursuant to CPLR article 78 and transferred to this Court in accordance with CPLR 7804, petitioner asserts that the determination was based primarily on unreliable out-of-court statements of Woodcrest residents, and hence was not supported by substantial evidence. We disagree.

* The specifications included charges that (1) petitioner himself, along with other residents, had beaten and sodomized several residents, (2) two residents were raped by a third resident and reported the incidents, but no action was taken by petitioner or the case manager, (3) two residents were hit by a third resident, (4) a resident was robbed at knifepoint by another resident, and informed petitioner, but no action was taken, (5) petitioner refused to grant DSS inspectors access to the premises and files of Woodcrest, (6) on five separate days, no one was left in charge of Woodcrest, (7) staff failed to provide adequate supervision to certain residents, permitting these residents to interfere with the interaction between DSS staff and other residents, and (8) petitioner, the case manager, and certain residents threatened and intimidated other residents, in an attempt to prevent them from exercising their right to leave Woodcrest.

Initially, we note that it is firmly established that hearsay is admissible in a hearing of this type *(see, Matter of Gray v Adduci,* 73 NY2d 741, 742; *see also,* 18 NYCRR 343.10 [b]), and that if the hearsay is "believable, relevant, and probative", it alone may constitute a sufficient basis for the administrative agency's determination *(see, Riley v Schles,* 185 AD2d 437, 438; *Matter of Harry's Chenango Wine & Liq. v State Liq. Auth.,* 158 AD2d 804, 805). This record contains more than ample evidence justifying the ALJ's finding that the hearsay testimony was indeed credible: there was expert testimony from psychologists establishing that the residents were capable of differentiating between truth and falsehood, and that they had no history of lying or making false accusations; in one instance, there was corroborating testimony by another caretaker that she had observed bruises and cuts on a resident who had attested that petitioner had beaten and sodomized him; in another instance, there was expert testimony that a resident who claimed to have been raped by another resident exhibited symptoms consistent with posttraumatic stress disorder immediately after the rape was alleged to have occurred. Additionally, several claims by different residents, each of whom asserted that a particular resident had beaten or robbed them, are borne out by the fact that DSS had previously directed petitioner, by two letters dated November 7, 1988 and April 18, 1990, to terminate that resident's admission agreement, because the resident posed a threat to the other residents. Considered together, the foregoing, without more, warrants the ALJ's conclusion that the hearsay reports of the residents could be relied upon as the basis for a determination with regard to the first four specifications.

Nor do we find respondents' reliance on these out-of-court statements to have deprived petitioner of his right to cross-examine the witnesses against him. Petitioner could have subpoenaed the residents and former residents, for this purpose, and in fact at one point his attorney stated that he would do just that; having chosen not to do so, it ill-behooves petitioner to now complain that the failure of these individuals to appear violated his due process rights *(see, Matter of Lewis v Chesworth,* 135 AD2d 995, 996, *lv denied* 71 NY2d 805).

With respect to specifications five through eight, the direct testimony of respondents' representatives furnishes an adequate basis for the ALJ's decision sustaining those charges.

Although petitioner's other contentions are similarly unavailing, two merit brief comment. It is no longer open to

dispute that in a civil or administrative proceeding, a party's invocation of the 5th Amendment of the US Constitution, and concomitant refusal to testify, may form the basis of an adverse factual inference *(see, Matter of Commissioner of Social Servs. v Philip De G.,* 59 NY2d 137, 141; *Matter of DeBonis v Corbisiero,* 155 AD2d 299, 300, *lv denied* 75 NY2d 709, *cert denied* 496 US 938). Second, with regard to the ALJ's refusal to "enforce" the subpoenas issued by petitioner's counsel, it suffices to note that although an ALJ may sign or issue a subpoena, enforcement of nonjudicial subpoenas may only be obtained by bringing a motion before Supreme Court *(see,* State Administrative Procedure Act § 304; CPLR 2308 [b]). Here, petitioner neither brought such a motion nor requested an adjournment for the purpose of doing so.

Mikoll, J. P., Mercure and Crew III, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.