Matter of Monaghan v Schroeder (2025 NY Slip Op 06959)

Matter of Monaghan v Schroeder

2025 NY Slip Op 06959

Decided on December 16, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 16, 2025

[*1]In the Matter of John M. Monaghan, Appellant,
Mark J.F. Schroeder, & c., et al., Respondents.

Eric H. Sills, for appellant.
Owen Demuth, for respondents.

WILSON, Chief Judge:

John Monaghan asks us to consider whether his due process right to confront and cross-examine officers in a license revocation proceeding was violated. The question he raises is one left [*2]unresolved by our decision in Gray v Adduci, 73 NY2d 741 (1988): can the Department of Motor Vehicles ("DMV") suspend a motorist's license based solely on written reports documenting the motorist's chemical test refusal when the motorist has properly subpoenaed the officers authoring the reports and the officers fail to appear as directed on the subpoena? We hold that CPLR 2308 (b)'s procedures for subpoena enforcement provide sufficient process; absent a motorist's use of those procedures, due process does not require the exclusion of hearsay evidence or dismissal of the charge. Because Mr. Monaghan did not seek enforcement of the subpoenas, and he makes no claim that the Administrative Law Judge ("ALJ") obstructed or penalized him for any such efforts, his due process rights were not violated. We therefore affirm.
I.
All facts are taken from the written documents signed and sworn to by Troopers Joseph Leggio and E. Strickland, who stopped Mr. Monaghan for various traffic infractions in February 2021. At the stop, the Troopers observed that Mr. Monaghan had "glassy, watery, bloodshot eyes, slurred speech" and the "strong odor of alcoholic beverage coming from his breath." Mr. Monaghan admitted he had consumed alcohol. Mr. Monaghan agreed to take a "horizonal gaze nystagmus" field sobriety test, which he failed. When asked to submit to a chemical breath test, Mr. Monaghan refused. Mr. Monaghan was then arrested for Driving While Intoxicated ("DWI").
The Troopers completed, and swore to the contents of, a Report of Refusal to Submit to Chemical Test ("Report of Refusal") (Vehicle and Traffic Law § 1194 [2] [b] [1]; 15 NYCRR 139.2 [a]). The Report of Refusal states that when Mr. Monaghan was asked to submit to a chemical breath test, he replied, "I refuse, I take the Fifth." Mr. Monaghan was then read "DWI warnings" to provide him with sufficient notice that refusal to submit to a chemical test would result in the immediate suspension and subsequent revocation of his driver's license. When asked a second time to submit to additional chemical testing, Mr. Monaghan verbally stated, "no." When asked a third time, Mr. Monaghan repeated that he would "take the Fifth." Although the Report of Refusal indicates that Trooper Leggio was the arresting officer and that Trooper Strickland read the required chemical test refusal warnings to Mr. Monaghan and witnessed the refusal, the bill of particulars states that it was Trooper Leggio who gave Mr. Monaghan the warning.
Mr. Monaghan's license was automatically suspended for 15 days pending a chemical test refusal hearing (see Vehicle and Traffic Law § 1194 [2] [b] [3])[FN1]. There are four elements that must be established at a DMV chemical test refusal hearing before an ALJ may revoke a motorist's license: (1) the police officer had reasonable grounds to believe that the motorist had been driving in violation of any subdivision of Vehicle and Traffic Law § 1192; (2) the motorist was lawfully arrested; (3) the motorist was given sufficient warning, in clear or unequivocal language and prior to their refusal, that refusal to submit to a chemical test or any portion thereof would result in the immediate suspension and subsequent revocation of their license or operating privilege whether or not they are found guilty of the charge; and (4) the motorist refused to submit to the chemical test or any portion thereof (Vehicle and Traffic Law § 1194 [2] [c]).
The hearing was initially scheduled for April 16, 2021. The DMV notified Troopers Leggio and Strickland of the date and time of the hearing and provided them with instructions advising them how to attend the hearing virtually. The Troopers failed to appear and the hearing was adjourned pursuant to DMV regulation (15 NYCRR 127.9 [c]). The hearing was rescheduled for June 4, 2021. Again, both Troopers were notified of the date and time of the hearing and provided instructions for how to join the hearing. In addition, Mr. Monaghan properly served both Troopers with nonjudicial subpoenas pursuant to CPLR 2302 (a).[FN2]
On June 4, 2021, the Troopers again failed to appear. Mr. Monaghan's counsel informed the ALJ that he had subpoenaed both Troopers and the ALJ entered the corresponding documents into evidence. The ALJ found Mr. Monaghan's subpoenas "valid, for the record," and then stated: "It does not mean that there is an automatic dismissal . . . I still go through the hearing as normally." Mr. Monaghan did not ask the ALJ to adjourn the hearing so that he could enforce the subpoenas. Instead, he asked the ALJ to dismiss the proceedings against him due to the Troopers' failure to appear referencing this Court's decision in Gray, to support his application. Although the ALJ acknowledged his familiarity with an "appeals case from 1997," the ALJ denied Mr. Monaghan's application to dismiss the refusal charge.
Over Mr. Monaghan's due process objections, the ALJ accepted the Report of Refusal into evidence and read into the record parts of Trooper Leggio's supporting deposition, in which he swore that he administered the refusal warnings to Mr. Monaghan. Mr. Monaghan then testified and denied that Trooper Leggio had read him the warnings. Mr. Monaghan also stated that he did not remember seeing Trooper Strickland. After Mr. Monaghan testified, the ALJ found that all elements for revoking Mr. Monaghan's license under Vehicle and Traffic Law § 1194 (2) (c) had been established.
On administrative appeal, Mr. Monaghan argued that he had properly subpoenaed the Troopers and had a due process right to cross-examine them under this Court's decision in Gray. The DMV Appeals Board affirmed the revocation of Mr. Monaghan's license. Mr. Monaghan then filed the instant CPLR Article 78 proceeding. Supreme Court transferred the case to the Appellate Division pursuant to respondents' request under CPLR 7804 (g), holding that Mr. Monaghan's appeal implicitly raised the issue of whether their determination is supported by substantial evidence.
The Appellate Division confirmed the DMV's determination and dismissed the petition (Matter of Monaghan v Schroeder, 223 AD3d 972, 972 [3d Dept 2024]). It reasoned that Mr. Monaghan made a "tactical decision . . . not to seek to have the issued subpoenas enforced nor did he request a further adjournment to do so" pursuant to CPLR 2308 (b) (Monaghan, 223 AD3d at 973 [internal citations omitted]). The court further held that the ALJ did not err because " 'administrative determinations may be supported by hearsay alone' " (id., citing Matter of Schloer v Commissioner of Dept. of Motor Vehs., 110 AD2d 1010, 1011 [3d Dept 1985], lv denied 65 NY2d 606 [1985]) and the revocation decision was supported by substantial evidence (id.).
Mr. Monaghan moved in this Court for leave to appeal. We denied the motion on the ground that the appeal lies as of right (CPLR 5601 [b] [1]). On appeal, Mr. Monaghan argues reversal is required because (1) the DMV failed to explain departure from its own binding precedent; (2) the ALJ's decision was not supported by substantial evidence; (3) the DMV violated Mr. Monaghan's statutory due process rights; and (4) his due process right to confront and cross-examine the Troopers was violated where, after the Troopers failed to appear at the hearing after being properly subpoenaed, the ALJ proceeded with the hearing and Mr. Monaghan's license was revoked.
II.
Mr. Monaghan's nonconstitutional arguments are unpersuasive. First, Mr. Monaghan fails to provide a record sufficient to establish that the DMV's own precedent required the ALJ to dismiss Mr. Monaghan's refusal charge when an officer fails to comply with a properly issued subpoena. In Matter of Charles A. Field Delivery Service, Inc., 66 NY2d 516, 517 [1985], we held that "[a] decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious." To support his argument that the agency's precedent required dismissal, Mr. Monaghan relies on a DMV Appeals Board decision (In the Matter of the Administrative Appeal of Thomas A. Deyhle, Case No. D95-33398, Docket No. 18657 [DMV Appeals Board decision dated August 1, 1997]) and a practice guide authored by Mr. Monaghan's counsel relying on that same decision (Gerstenzang & Sills, Handling the DWI Case in New York [2024-2025 ed], vol 2, § 41:52).
Deyhle was summarily decided and the DMV Appeals Board did not explain any basis for its decision. Mr. Monaghan asks us to infer Deyhle's holding based on the motorist's arguments to the Appeals Board and Mr. Monaghan's counsel's unsworn assertions that, as a matter of practice, since Deyhle the DMV has closed refusal hearings in favor of the motorist when subpoenaed officers fail to appear. Counsel for the DMV disputes the uniformity of the practice. The record on appeal is insufficient to show the agency's own precedent and, therefore, for us to determine whether the DMV's decision in Mr. Monaghan's case is an unreasoned departure from settled agency precedent.[FN3]
Second, Mr. Monaghan argues that no substantial evidence supports the finding that he was [*3]properly warned of the consequences of refusing to submit to a chemical test. Substantial evidence exists when "a reasonable mind could accept the report as 'adequate to support a conclusion or ultimate fact' " (Gray, 73 NY2d at 743, citing 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). Mr. Monaghan bases his argument on the inconsistency between the Report of Refusal, in which the Troopers swore that Trooper Strickland administered the warning, and Trooper Leggio's supporting deposition, which states that Trooper Leggio administered the warning. Mr. Monaghan also relies on his testimony that he did not receive the warning at all. Although the Report of Refusal and supporting deposition provide contradictory accounts of who gave the warnings, a reasonable mind could conclude that the Troopers' sworn statements established that one or both of the officers administered the warnings, which is sufficient to meet the substantial evidence standard even in the face of Mr. Monaghan's denial.
Third, Mr. Monaghan failed to preserve his argument that the proceedings violated his statutory right to cross-examination under the State Administrative Procedure Act § 306. Therefore, that claim is not properly before us.
III.
Relying on our decision in Gray, Mr. Monaghan argues that his due process right to confront and cross-examine the officers was violated where the officers failed to comply with properly issued subpoenas and the ALJ revoked Mr. Monaghan's license based on the officers' written report and supporting deposition. Mr. Monaghan did not seek enforcement of the issued nonjudicial subpoenas as available under CPLR 2308 (b), and he does not allege that the ALJ prevented him from doing so. Accordingly, we reject his due process right claim.
Specifically, Mr. Monaghan argues that enforcement of nonjudicial subpoenas pursuant to CPLR 2308 (b) is not a remedy available to motorists in license revocation proceedings under DMV regulations. We disagree.
CPLR 2308 (b) provides, in relevant part, that "[u]nless otherwise provided, if a person fails to comply with a subpoena which is not returnable to court, the issuer or the person on whose behalf the subpoena was issued may move in supreme court to compel compliance" (emphasis added). 15 NYCRR 127.11, titled "Effect of other laws," provides:
"(a) The provisions of the Criminal Procedure Law are not binding upon the conduct of administrative hearings. Except as provided in subdivision (b) of this section and section 127.6(b) of this Part, the provisions of the Civil Practice Law and Rules are not binding upon the conduct of administrative hearings. The provisions of those laws regarding forms of pleading, motion practice, discovery procedures, including demands for bills of particulars, and other matters are not applicable to hearings conducted in accordance with this Part.
(b) The provisions of section 2302 of the Civil Practice Law and Rules, regarding the issuance of subpoenas, are applicable to hearings conducted in accordance with this Part."
Mr. Monaghan asserts that subsection (a) is dispositive because it states that the provisions of the CPLR pertaining to "motion practice" are not applicable and enforcement of a nonjudicial subpoena requires filing a motion in Supreme Court. But 15 NYCRR 127.11 states only that provisions of the CPLR "are not binding upon the conduct of administrative hearings" (id. [emphasis added]). Because CPLR 2308 (b) authorizes litigants to enforce their nonjudicial subpoenas by filing before Supreme Court, none of the subpoena enforcement process pertains to "the conduct of administrative hearings." Indeed, "forms of pleading, motion practice, discovery procedures" all govern formal rules of pre-trial practice in plenary actions that are inapplicable to DMV administrative hearings. Subpoena issuance, by contrast, is directly carved out as applicable to DMV administrative hearings under 15 NYCRR 127.11 (b). It would be illogical to allow the issuance of subpoenas without a corresponding enforcement mechanism. 15 NYCRR 127.11 was promulgated to formalize DMV practice as to "Hearing Procedures" (8 NY St Reg August 13, 1986, at 11-13), not to limit the process available to litigants. Moreover, courts have interpreted CPLR 2308 (b)'s "[u]nless otherwise provided" language in a straightforward way: to mean that section 2308 (b) applies to administrative hearings unless the agency has adopted its own procedures for issuing and enforcing subpoenas [FN4]. The DMV has not created its own subpoena enforcement mechanism. Thus, CPLR 2308 (b) is an available remedy to enforce nonjudicial subpoenas to motorists in license revocation proceedings.[FN5]
To determine whether a petitioner has been afforded due process in an administrative proceeding, we must balance three factors: "(1) the nature of the private interest affected by the State's action; (2) the risk of an erroneous deprivation and the effect of additional procedural safeguards; and (3) the governmental interest" (Matter of Miller v DeBuono, 90 NY2d 783, 792 [1997]). In Gray, the officer failed to appear for a chemical test refusal hearing and, on the first two occasions, the ALJ adjourned the hearing. On the third occasion, the ALJ proceeded with the [*4]hearing, introduced the officer's written report of refusal into evidence and revoked the motorist's license. We rejected the motorist's due process claim reasoning that the motorist "always had it within his power to subpoena the officer at any time" and had made a "tactical decision" to only object on hearsay grounds and not seek an adjournment to subpoena the officers (Gray, 73 NY2d at 743). Gray left open whether serving a subpoena is enough to require the exclusion of hearsay evidence or dismissal on due process grounds, or whether the motorist must also attempt to enforce the subpoena.
Although due process protections in administrative contexts are less than those applicable to criminal prosecutions, where the government seeks to deprive an individual of a protected interest the due process right to cross-examine adverse witnesses in administrative proceedings is the same as in a civil proceeding (see e.g. Matter of McBarnette v Sobol, 83 NY2d 333, 339 [1994] ["It is settled that even where administrative proceedings are at issue, no essential element of a fair trial can be dispensed with unless waived" [internal quotation marks omitted]; Friedel v Board of Regents of Univ. of New York, 296 NY 347, 352 [1947] ["We do not mean to hold (and did not hold in Matter of Epstein v Board of Regents, supra) that the right to cross-examine is less when the hearing is before such a board than when it is before a court. Cross-examination of adverse witnesses is a matter of right in every trial of a disputed issue of fact" [internal citations omitted]). "In assessing whether due process requires the production of particular witnesses for cross-examination, a hearing officer should consider the nature of the evidence, the potential utility of trial confrontation in the fact-finding process, and the burden of producing the witness" (Matter of Gordon v Brown, 84 NY2d 574, 578 [1994] [internal citations omitted]). Because of the statutory structure of refusal hearings, it is clear that a reporting officer's allegations are core to the hearing's resolution (see Vehicle and Traffic Law § 1194 [2] [b] [1] — [2] [requiring arresting officer to author refusal report giving rise to hearing]), and thus, Mr. Monaghan had a right to cross-examine the Troopers as a matter of procedural due process (see Gray, 73 NY2d at 742 [stating that petitioner "had the right to call the officer as a witness"]; Matter of McBarnette, 83 NY2d at 338 [physician accused of sexual misconduct was entitled to cross-examine his accuser at an administrative disciplinary hearing]).
However, balancing the three due process factors, we reject the contention that Mr. Monaghan's was deprived of his due process right to cross-examine the Troopers. His private interest in retaining his driver's license and the government's interest in public safety are both significant. The due process analysis, here, turns on the benefit and burden of requiring a motorist to seek judicial enforcement of a subpoena. Mr. Monaghan chose not to avail himself of the process set forth in CPLR 2308 (b). The process of applying to enforce a nonjudicial subpoena is not so unduly burdensome as to constitute a deprivation of due process of law. Our holding is consistent with appellate courts' decisions rejecting due process challenges in other types of administrative proceedings where the petitioner has not attempted to enforce a subpoena [FN6]. It is undisputed that Mr. [*5]Monaghan did not seek enforcement, nor did he request an adjournment to do so. Furthermore, Mr. Monaghan's license had been temporarily reinstated fifteen days after his arrest, pending the outcome of the chemical test refusal hearing (Vehicle and Traffic Law § 1194 [2] [c]). Because there is no allegation that the ALJ did revoke, or would have revoked, Mr. Monaghan's temporary license reinstatement had he requested an adjournment to seek enforcement of the issued subpoenas, we do not address whether the outcome would be different in such circumstances.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur.
Decided December 16, 2025

Footnotes

Footnote 1: Mr. Monaghan's license was immediately suspended after his arrest. Fifteen (15) days after the date of Mr. Monaghan's arraignment, his license was reinstated pending a decision in his chemical test refusal hearing (see Vehicle and Traffic Law § 1194 [2] [c]).
Footnote 2: CPLR 2302 (a) provides, in relevant part, that a subpoena: "may be issued without a court order by . . . an attorney of record for a party to an . . . administrative proceeding."
Footnote 3: By way of a post-argument submission, Mr. Monaghan provided a copy of a DMV Appeals Board decision from November 2025, in which the Board dismissed a chemical test refusal charge where the officers failed to comply with properly issued subpoenas, citing our decision in Gray (In the Matter of the Administrative Appeal of Aktaruzzman, Case No. 2474868, Docket No. 52058 [DMV Appeals Board decision dated November 18, 2025]). We review Mr. Monaghan's appeal based on the record as it existed at the close of the administrative proceedings, in 2021, and the 2025 Appeals Board decision to which he directs us does not inform us what rule the Board had in place several years before, nor does it even cite to Deyhle. Whether the Aktaruzzman decision states the Board's current rule, nothing in our decision today prevents it from adhering to or adopting a rule that is more favorable to motorists than what constitutional due process requires.
Footnote 4: See Matter of Irwin v Board of Regents, 27 NY2d 292, 297 (1970); see also Matter of Moon v New York State Dept. of Soc. Servs., 207 AD2d 103, 104 (3d Dept 1995); Matter of Whalen v John P., 72 AD2d 961, 962 (4th Dept 1979); Matter of Moore v Sunshine, 126 Misc 2d 284, 285-286 (Sup Ct NY Co 1984).
Footnote 5: The full panoply of remedies listed in the statute are available and can be enforced against police officers who fail to comply with a properly issued nonjudicial subpoena. CPLR 2308 (b) provides that if Supreme Court "finds that the subpoena was authorized, it shall order compliance" (emphasis added). The statute also permits Supreme Court to "impose costs not exceeding fifty dollars," and states that the "subpoenaed person shall also be liable to the person on whose behalf the subpoena was issued for a penalty not exceeding fifty dollars and damages sustained by reason of the failure to comply" (id. [emphasis added]). Finally, CPLR 2308 (b) states that Supreme Court "may issue a warrant directing a sheriff to bring the witness before the person or body requiring his appearance."
Footnote 6: See e.g. Matter of Martell, 179 AD3d 1227 (3d Dept 2020) (rejecting petitioner's due process challenge before the Unemployment Insurance Appeal Board on the basis that petitioner failed to request an adjournment to enforce issued subpoenas); Matter of Anderson v Bane, 199 AD2d 708 (3d Dept 1993) (same on review of a determination of the State Department of Social Services); Dowling v Gardner, 198 AD3d 1056 (3d Dept 2021) (same on review of determination of the Comptroller); Silverman v State Liq. Auth., 47 AD2d 226, 227 (2d Dept 1975) (same on review of proceeding before the New York State Liquor Authority).